[Civ. No. 5618. Third Appellate District.—March 5, 1937.]

ISABELLE A. GOODSPEED et al., Respondents, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5690. Third Appellate District.—March 5, 1937.]

R. V. WEST, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5691. Third Appellate District.—March 5, 1937.]

ANGELINE HOUK et al., Respondents, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5692. Third Appellate District.—March 5, 1937.]

O. L. RAPER, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5693. Third Appellate District.—March 5, 1937.]

A. G. GLASS, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5694. Third Appellate District.—March 5, 1937.]

C. H. RAYNSFORD et al., Respondents, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5695.  Third Appellate District.—March 5, 1937.]

BERTHA WARD et al., Respondents, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5696.  Third Appellate District.—March 5, 1937.]

FERDINAND CAVASSA et al., Respondents, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5697.  Third Appellate District.—March 5, 1937.]

DEWITT T. MARSHALL, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5698.  Third Appellate District.—March 5, 1937.]

C. E. ROSE et al., Respondents, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5699.  Third Appellate District.—March 5, 1937.]

LEE OWEN et al., Respondents, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5700.  Third Appellate District.—March 5, 1937.]

W. D'EGILBERT, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5701.  Third Appellate District.—March 5, 1937.]

CALIFORNIA WESTERN STATES LIFE INS. CO. (a Corporation), Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5702.  Third Appellate District.—March 5, 1937.]

B. M. HOWARD, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5703. Third Appellate District.—March 5, 1937.]

LEO W. DOYLE, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5704. Third Appellate District.—March 5, 1937.]

A. T. ARMSTRONG, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5705. Third Appellate District.—March 5, 1937.]

A. C. TUCKER, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5706. Third Appellate District.—March 5, 1937.]

JOSEPH H. GRUT, as Receiver, etc., Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5707. Third Appellate District.—March 5, 1937.]

G. LAMALFA, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5708. Third Appellate District.—March 5, 1937.]

S. A. SPURGIN, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5709. Third Appellate District.—March 5, 1937.]

BUTTE FARM LAND COMPANY (a Corporation), Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

[Civ. No. 5710. Third Appellate District.—March 5, 1937.]

GEO. NICHOLSON, Respondent, v. GREAT WESTERN POWER COMPANY OF CALIFORNIA (a Corporation) et al., Appellants.

Thos. J. Straub, W. R. Dunn, George F. Jones, Jerome D. Peters and W. H. Spaulding for Appellants.

Ware & Ware for Respondents.

PULLEN, P. J.—Upon the ground that there was no judge in the county of Butte qualified to act in the above entitled actions, defendants moved for a change of place of trial. After hearing, the motion was denied and these appeals from those orders were then taken. The specific grounds of objection will be hereinafter mentioned.

Early in this century the predecessors of Great Western Power Company were engaged in the construction of Lake Almanor and in acquiring water rights in connection therewith. The Feather River Canal Company was organized as a public utility in 1908. This company held certain appropriative water rights and a franchise for the construction of canals across the highways and public roads of the county. Later the Feather River Canal Company conveyed all its rights to the Feather River Water Company. In 1915 these two companies conveyed all their canal property to Western Canal Company and all their appropriative rights to the Great Western Power Company. These companies then became engaged in the selling of water to the land holders within their sphere of service, and under the claim that the Canal Company was a mutual water company, required its patrons to subscribe for shares of stock in the Canal Company. This company continued to operate and distribute water to its subscribers for several years, although the question of its character, whether a mutual or public service company, was at times disputed.

Finally a proceeding was instituted before the Railroad Commission to have the status of the Canal Company determined, and in 1930 the Commission held the Canal Company to be a public service corporation, and in *Western Canal Co.* v. *Railroad Commission*, 216 Cal. 639 [15 Pac. (2d) 853], where that determination was upheld, will be found a detailed recital of the history of the Canal Company and its various allied interests.

In 1932 the present actions were commenced. The complaint in each case charged that a fraud had been committed, against the persons interested in the lands under the canals, by representations made by defendants herein as to the mutuality of the Canal Company. In 1933, *Harry Deirup*

took the office of the judge of the above entitled court, and shortly thereafter motions were made in the Goodspeed and Ward cases to change the place of trial from Butte County to the city and county of San Francisco. These motions were denied by the judge of the court and affirmed by this court. (*Ward et al.* v. *Great Western Power Co.* (*Goodspeed et al.* v. *Great Western Power Co.*), 135 Cal. App. 687 [27 Pac. (2d) 937].) Subsequently he overruled demurrers and motions to strike. In January, 1935, the Goodspeed case was brought to trial. Just prior to the trial, appellants, in a conversation with the judge of the court, suggested to him that he might be disqualified, but no such disqualification appearing to the judge, he refused to withdraw. Nothing further was done, and the case proceeded to trial and continued for seven weeks, and at the conclusion of the taking of testimony the case was argued and submitted upon briefs, after which the judge of the court decided in favor of plaintiffs. Findings were prepared and submitted but were not signed, pending the trial of certain other cases which began October 1, 1931.

It was during the trial of one of these subsequent cases (*Cavassa* v. *Great Western Power Co. et al.*), that appellants assert they came into possession, for the first time, of knowledge that indicated to them that the judge of the court was disqualified, and they thereupon formally challenged the qualification of the judge of the court, and filed notice of motion for change of place of trial. The Judicial Council assigned Judge Moncur of the county of Plumas to try the motion, and evidence was taken, both oral and documentary, and after submissions, the motions were, on November 18, 1935, denied. The next day the judge of the court signed findings of fact and conclusions of law, and a judgment for plaintiffs in the Goodspeed case was duly entered, but later these findings and judgment were, under the provisions of section 473 of the Code of Civil Procedure, set aside.

Upon the filing of formal objections as to the qualifications of the judge of the court, Judge Moncur was again assigned by the Judicial Council to pass upon the same, and after hearing, the judge of the court was found to be qualified and the motions were denied.

These appeals are from the orders in the various consolidated cases denying the motion for change of place of trial.

Appellants claim that under subdivision 4 of section 397 of the Code of Civil Procedure, the court must change the place of trial when from any cause there is no judge of that court qualified to act.

It is alleged by appellants that among the various causes disqualifying the judge of the court are:

1. That he is a stockholder in two banks, which it is claimed are included within the class of persons claimed to have been defrauded, and as such, had and has an interest in the outcome of the actions, and an interest in points of law to be determined.

2. That he had and has fixed opinions upon the facts and the legal effect of the facts, which were derived from his own experience and not from evidence.

3. That he, through his law partner, was legally retained to represent some of the plaintiffs in actions for rescission for fraud upon the same asserted grounds as relied upon in the present actions.

4. That he failed to make a statement of material facts when questioned by counsel for appellants as to his qualifications.

5. And that he stood in too close relation to counsel for plaintiffs, as indicated by certain acts of court and counsel and by signing findings of fact and conclusions of law without notice to appellants, after appellants had announced that his qualifications would be challenged.

Taking up these various specifications in the order presented, we will first examine the charge that the judge of the court was interested in the outcome of the action and of the points of law involved. This allegation is based upon the provisions of section 170 of the Code of Civil Procedure. That section provides: "No judge . . . shall sit or act as such in any action or proceeding . . . 2. In which he is interested as a holder or owner of any capital stock of a corporation . . . , 5. When it is made to appear probable that by reason of bias or prejudice of such . . . judge . . . a fair and impartial trial cannot be had before him."

It appears that for many years Judge Deirup was, as a practicing attorney, counsel for the First National Trust & Savings Bank of Chico and Peoples Savings and Commercial Bank. In each of these banks he owned stock, which ownership continued after his election and ascension to the bench

in January, 1933. In July and August, 1933, these banks went into liquidation and Judge Deirup was assessed and paid his *pro rata* of the stock assessments.

The First National Bank at one time loaned money to one Peterson. In 1926, the obligation not having been paid, the bank took over the Peterson lands and in connection with it eighty-eight shares of water stock in Western Canal Company. In October, 1933, this land and stock was sold in liquidation of the bank's assets. As to the Peoples Bank a loan was made in 1928 to Raysford and Mayne. In 1930 the land and a contract to purchase water stock were taken, and in 1934 the lands were sold in liquidation of the bank's assets.

It is the claim of appellants that Judge Deirup, by reason of the ownership of stock in the two banks, is in the class of those injured by the alleged false representations made by the canal company, and was disqualified to preside in the present actions.

The question arises immediately as to what constitutes a disqualifying interest under the law. In 33 Corpus Juris, page 992, the rule is laid down that "the interest which disqualifies a judge is a direct pecuniary, or direct property interest or one which involves some individual right or privilege in the subject matter of the litigation whereby a liability or pecuniary gain must occur in the event of the suit." In 14 California Jurisprudence, page 813, it is asserted an interest to disqualify must be "a pecuniary one, either direct or indirect, or it must be a personal or property interest—an interest in the event of suit—in the judgment which may be rendered. Where the interest is not affirmatively made out or shown to be a direct or proximate one with regard to the subject matter of pending action, no disqualification exists".

In connection with the foregoing definitions it is to be recalled that no actions have ever been brought by either of the banks in which Judge Deirup owns stock, and it is obvious that although in this action many cases were consolidated with the case on trial they are not what is understood as class cases as that term is used in section 1711 of the Civil Code, where a right of action is vested in a particular class of persons. That section reads: "One who practices deceit with intent to defraud the public or a particular class of persons is deemed to have intended to defraud every in-

dividual in that class who is actually misled by the deceit.''
Section 382 of the Code of Civil Procedure defines class as
'' . . . when the question is one of a common or general in-
terest, of many persons, or when the parties are numerous,
and it is impracticable to bring them all before the court, one
or more may sue or defend for the benefit of all.''

In the instant cases the rights and merit of each rest upon
different facts, and recovery in one case is not an adjudica-
tion in any other. Certain water users must overcome a
burden as to notice and limitations; others bought and paid
for stock direct from the company, some purchased stock and
land from third persons, some acquired stock and rights
of possession by succession, and still others might maintain
a cause of action by reason of having lent money on land and
its fictitious stock.

A true class is found where one stockholder sues in the
same action for the benefit of all or where one member of a
church sues for the benefit or relief of other members. (20
Cal. Jur. 484.)

Perhaps these several causes of action could have been
joined under the authority of section 378 of the Code of Civil
Procedure, but if joined, they would still have been separate
actions, separately stated and adjudicated upon their sep-
arate merits, and judgment in one would by no means have
been a judgment in any other.

Interest in law, as applied to a judge, had and must
have, a highly special and definite meaning. It means an
interest direct, proximate, inherent in the instant event. It
does not mean an interest in a similar suit against the same
or other defendants; it does not mean an interest in a point
of law as such, or in an issue of fact as such, or in any general
or special phase of the case. It means a definite, material,
financial stake in the direct outcome of the particular case.

The case of *Lindsay-Strathmore Irr. Dist.* v. *Superior
Court*, 182 Cal. 315, 326 [187 Pac. 1056], has been cited by
both sides. In that case plaintiff sought to enjoin defendant
from pumping water which it was claimed would deplete
subterranean waters under the lands of the Tulare Irrigation
District and many others, including a lot individually owned
by Judge Wallace. It was a true class case in which there
were many parties involved, and was for the direct benefit of

members of the whole class, and in which Judge Wallace might have been named or intervened or become a party. Under the facts of that case Judge Wallace was held to have a direct property interest in the outcome and therefore held to be disqualified. ■ In the instant case neither Judge Deirup nor the banks in which he held stock could intervene or would directly profit by any judgment in the Goodspeed case or any of the other consolidated cases. It does not follow that merely because someone else had a similar, but wholly separate cause of action, arising in part from the same facts as appeared in the Goodspeed case, but differing in material aspects, such party was interested in the case at bar.

Defendants have cited the case of *Hall* v. *Superior Court*, 198 Cal. 373 [245 Pac. 814], but in that case the irrigation district was a party and its rights and liabilities were directly involved. The judge in that case was a land owner in the district, and as such, directly and financially concerned. That case holds in effect that the land owner in a litigant irrigation district bears a relationship to the district analogous to that of a stockholder of a corporation, and where the district is an actual party, he therefore has an actual disqualifying interest.

The situation here is somewhat analogous to that in *Central Pacific Ry. Co.* v. *Superior Court*, 211 Cal. 706, 719 [296 Pac. 883]. There, the judge of the court was a depositor in the Bank of America, the holder of a mortgage interest in the land to be condemned, and also held stock of the Transamerica Corporation, which corporation owned practically all of the stock of the Bank of America. In an attempt to disqualify the judge of that court from presiding in the matter the court held that a bare relationship of depositor was not sufficient to disqualify, nor was the fact that the trial judge was a stockholder in a holding corporation sufficient to disqualify him under section 170 of the Code of Civil Procedure, inasmuch as the corporation was not and could not be made a party to the action and his interest did not appear to be an immediate and direct interest in the outcome of the litigation.

In *Lassen Irr. Co.* v. *Superior Court*, 151 Cal. 357 [90 Pac. 709], an action was brought for damages against the irrigation company for failure to deliver water. One of the de-

cisive issues of fact was whether or not the company had the water and could deliver it. In the answer of the company it was alleged that the plaintiff had only a right to share in the available water, and that a large number of other users, including the judge of that court, had paramount water rights. A challenge was interposed to the qualifications of the judge on the ground of interest, and the court there said:

"The owners of these paramount rights were not necessary parties to the action. . . .

"It was not an action against him and no judgment which he could render there would in the least determine, or affect, his own property rights or interest. The only judgment that could properly be given in the action would be a judgment in favor of plaintiff for such damages as the court would find he had suffered by the deprivation of water, or a judgment in favor of defendant, that the plaintiff take nothing. . . .

"The interest in an action which disqualifies a judge who possesses it from trying the case is a property or personal interest, an interest in the event of the suit, in the judgment which may be rendered therein. *Lassen Irrigation Co.* v. *Superior Court,* 151 Cal. 357 [90 Pac. 709]."

In the case of *Central Sav. Bank of Oakland* v. *Lake,* 201 Cal. 438 [257 Pac. 521], the trial judge owned stock in a title insurance company which had insured the title of many beneficiaries under the terms of various deeds of trust in the city of Oakland in which appellant's land was situated. Plaintiff was attacking the validity of a deed of trust, and if successful, then all other similar deeds would fail, and the title insurance company in which the judge of that court owned stock, would be called upon to respond very heavily in damages. The court there held, however, that the insurance company was not a party to the action nor was it shown that the company had issued a policy of insurance upon the particular property in controversy. The court in ruling against the motion to disqualify the judge, held, "The interest so alleged is so indirect, incidental, remote and contingent as not to bear the slightest resemblance to the direct, measurable and pecuniary interest in the subject matter of the action required to be shown in order to disqualify the Judge."

We cannot find, under the facts of this particular specification of disqualification, such an interest as in contemplation of law would operate as a disqualification.

It is next asserted the judge of the court had fixed opinions upon the facts and the legal effect thereof, which were derived from his own experience and not from evidence.

One of the important points in the case turns upon the question as to whether or not plaintiffs are barred by the statutes of limitation. An action for fraud, under subdivision 4 of section 338 of the Code of Civil Procedure is barred after three years unless plaintiff proves good cause for failure to discover the facts within that period. It is charged by appellant that the judge of the court has fixed opinions upon this matter. This opinion is, they claim, the result of the investigations made by the judge while a practicing attorney, and not the result of evidence adduced during the trial. It is stated in an affidavit filed by Mr. Dunn, one of the attorneys for the defendant, that after the conclusion of the trial in the Goodspeed case and while discussing the proposed findings, the judge in his chambers then stated that under the circumstances where the land owner was being financially benefited by the existing arrangement, no reasonable person, as owner of stock in the canal company, would have commenced an action for the recovery of moneys paid by them for such stock. The judge of the court, in his reply affidavit, stated that such was merely an expression of legal opinion based upon the facts of that case and made after decision, and had no general reference to any other case or state of facts.

It is disclosed by the evidence that in 1921, the judge of the court, then a young practicing attorney associated with Mr. Lon Bond, now deceased, in an effort to obtain business, asked one who is now a plaintiff in an action similar to the one now before us, to get water users to sign a contract of employment, whereby for a cash consideration and a further sum in the event of a successful termination of litigation, the land owner would employ the firm of Bond & Deirup to undertake an action to have the Western Canal Company declared a public utility. No signers were obtained and the matter was dropped. About a year later Mr. Jerome D. Peters, also an attorney in Chico, and one of the present attorneys for defendants here, was negotiating with Western Canal

Company to have the minimum charge removed from their contract, and stated to Mr. Bond that he might bring an action to test the mutuality of the canal company, and asked Mr. Bond in case such action were brought if there was any reason why he, Mr. Bond, could not be associated in the case, to which Mr. Bond replied that he would be willing to be associated if such actions were brought. No action of that nature was ever brought, however. It is admitted by the judge of the court, that while an attorney and during the year 1921, he acquired some fragmentary data as to the status of the canal company. Out of the 280 exhibits introduced in these cases the judge had made some examination of seven, none of which were disputed or questioned, and which he avers had not the slightest effect upon his rulings in these cases. These exhibits examined by the judge of the court consisted of the articles of incorporation of the Western Canal Company; the conveyance from the Feather River Canal Company, and the conveyance by the Feather River Canal Company and the Mutual Water Company of their appropriative rights to the power company. He had also read the ordinance granting the franchise to the canal company. He also talked to some of the farmers in the vicinity of Chico, and a former employee of the canal company, while working in a local chamber of commerce drive.

Appellants set forth in considerable detail all the knowledge and sources of knowledge open to the judge of the court prior to the trial of these cases, but such information appears to us to have been only such knowledge as any alert and wide awake citizen of that community would have acquired. More accurate and detailed information than the judge of the court had picked up in his reading, was to be gleaned of the litigation involving the canal company and its affiliates, in the printed volumes of the proceedings of our courts, with which every judge and lawyer was presumed to have become familiar.

Considerable emphasis is laid upon the fact that the judge of the court did not immediately recall all of the details of what he did some fifteen years before as an attorney and a citizen in his community, but this does not impress us as unusual. After the various matters were specifically called to his attention and he had an opportunity to refresh his recollection he very fully and frankly disclosed his con-

nection with the matters in question. It seems more strange to us that Mr. Spaulding, one of the attorneys for defendants was not reminded of any possible disqualification of the judge of the court until after a decision adverse to the defendants had been entered, for during almost all of the existence of the canal company from 1921 and following, he was the president of the canal company, and had actually received, and made notations, upon a copy of the proposed contract of employment prepared by Mr. Deirup. It is claimed, however, that defendants knew nothing of this relationship of Mr. Deirup, the attorney, with the proposed litigation involving the canal company until a copy of a letter was found in a file belonging to Mr. Peters, also an attorney for defendants. This letter was one of several which had been mailed by Mr. Peters to water users, whom he was attempting to interest in contesting certain clauses in the water contract, wherein he stated that attorneys Bond & Deirup were associated with him in the matter. These letters had been in Mr. Peters' possession at all times since 1923, and were acknowledged by Mr. Peters as having been in his possession all of that time. Mr. Peters, however, in an affidavit, fairly and frankly states that as an attorney he negotiated with the Western Canal Company for the elimination of certain minimum charge provisions in their water contracts, and that during these negotiations he called upon Mr. Bond and asked Mr. Bond if, in the event of the commencement of the action the firm of Bond & Deirup would become associated as attorneys with him. It is stated that no such action was ever commenced, and at the meetings of the various clients neither Bond nor Deirup attended or otherwise advised with affiant or his clients or took any part in the negotiations, and that he did not communicate any further facts to Mr. Bond nor did he at any time consult with or meet in said matter, Mr. Deirup. Mr. Peters also stated that he never paid any money whatsoever out of his fees to Bond or Deirup on account of said transaction, and that when he inquired of Mr. Bond as to whether or not Mr. Bond considered his firm was entitled to any compensation, Mr. Bond declared that they were not.

Counsel for both sides have discussed this phase of the case very fully, and we might go into these issues further in great detail, but such a discussion would extend this opinion

beyond reasonable limits. We are convinced, however, that the knowledge possessed by the judge of the court was only that of an informed member of the community, and also that such facts were but a very small part of the large mass of the evidence introduced during the trial, and did not weigh with the judge of the court except as and when they were offered in evidence relative to the case as a whole.

There is no evidence except the bare allegation contained in certain affidavits made by some of counsel for defendants that there existed bias or prejudice in the mind of the judge of the court. No knowledge, experience or opinion can give rise to bias or prejudice unless it results in hostility or ill will, and here no such charge is made or even suggested. (*Lassen Irr. Co.* v. *Superior Court,* 151 Cal. 357 [90 Pac. 709].)

As further evidence of prejudice appellants cite the signing of the findings in the Goodspeed case which were set aside by Judge Moncur. It was during the trial of the Cavassa case that counsel for appellants stated they would challenge the qualifications of the judge of the court, and on October 17, 1935, a motion for change of trial upon the ground of disqualification was filed. Judge Moncur was assigned to try that issue and the matter was heard on October 24, 1935, and argued October 29, 1935. On November 16th, the motion was denied.

Turning now to the Goodspeed case, wherein it was alleged the judge of the court indicated his bias or prejudice by signing the findings in question, we find the complaint was filed December 12, 1932. The trial commenced January 22, 1935, and consumed 26 days. On June 5, 1935, the case was reopened by defendant for further evidence, and on September 3, 1935, a memorandum decision in favor of plaintiff was filed. On October 1, 1935, the findings and judgment were submitted to the court and served on opposing counsel. On October 16, 1935, a challenge was interposed in the Cavassa case to the qualifications of the judge. On November 18th, the decision of Judge Moncur held the judge of the court was not disqualified, and on November 19, 1935, findings in the Goodspeed case were signed and filed.

The record thus discloses that for approximately one and one-half months the findings in the Goodspeed case had been

under submission and no request had been made for a post-ponement of the signing.

We cannot conclude from the foregoing, either standing alone or in connection with the entire course of conduct of the judge of the court, or by his decision or by the record, that the signing of the findings the day after the judge of the court was held not disqualified, indicates any bias or preju-dice.

■ As to the failure of the judge to make a statement of material facts when questioned by counsel for appellants as to his qualifications, but little need be said. This con-versation took place prior to the trial of any of these cases. The judge of the court then declared that about fifteen years before he had made some preliminary study of the canal company, but the details were vague and no employment re-sulted. He then said if there was any question as to his disqualification he would be glad to have the matter deter-mined. The Goodspeed case was called and occupied several weeks of trial. Some months after the question of disqualifi-cation had been thus informally suggested, and during the trial of another case, the judge of the court was then formally challenged.

■ So, also, as to the charge of a too close relationship between the attorneys for plaintiff and the judge of the court, we find no merit. Nothing is contained in the affidavits pertaining to that particular charge that merits any further comment or consideration. The briefs submitted together with the affidavits in support of the various charges have been examined and carefully considered. It would be impossible within reasonable limits of an opinion, to set forth all of the various charges and accusations made, or to analyze the facts out of which they arose, but we are convinced, as was the judge to whom these matters were first referred, that the judge of the court was not disqualified for these or any reason whatsoever.

The motion to change the place of trial was properly denied, and the orders appealed from are affirmed. The writ of super-sedeas is denied.

Thompson, J., concurred.

Plummer, J., deeming himself disqualified, did not partici-pate in this decision.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 3, 1937, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 3, 1937.