[L. A. No. 26756. In Bank. Aug. 2, 1962.]

PETER E. CHANCE et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; JOSEPH F. KING et al., Real Parties in Interest.

C. Douglas Wikle, Walter Atkinson, W. Alan Thody and Dell L. Falls for Petitioner.

Harold W. Kennedy, County Counsel, and Donald K. Byrne, Deputy County Counsel, for Respondent.

Cooper & Boller, Harvey G. Cooper and David B. Boller for Real Parties in Interest.

WHITE, J.—By this proceeding in prohibition and mandate petitioners challenge the jurisdiction of the Superior Court of Los Angeles County to proceed further with a representative action instituted to recover upon notes by foreclosing numerous separate deeds of trust securing those promissory notes and held upon allegedly separate but contiguous lots situated within the same tract of land. Alternative writs of prohibition and mandate were issued.

The basic action was filed by plaintiffs and real parties in interest Joseph F. King, Teodor Iovan, Nick Katuna, Sylvia Katuna, and Scott Haselton, owners of notes in default secured by trust deeds upon parcels of land within the instantly involved tract, on behalf of themselves and all the other owners of trust deeds upon the alleged lots within this tract. Petitioners Peter E. Chance and Howard W. Clarke, as two owners of such trust deeds upon parcels within this tract, and thus among the class plaintiffs seek to represent, intervened in the basic action objecting to the representative nature of the suit, and attempted to prevent prosecution of the basic action except as to the therein individually named plaintiffs. Interveners' objections to the prosecution of a class action were overruled by the trial court.[1] In addition to filing answers, real parties in interest also have demurred to the instant petition.

The litigation with which we are here concerned arises out of the unfortunate aftermath of the "10 Percenter" financial bubble, wherein thousands of individuals and many tracts of land in this state are involved. David Farrell, who appears to have been the principal force behind an institution designated Los Angeles Trust Deed and Mortgage Exchange (hereinafter referred to as Exchange), was conducting a lucrative investment scheme whereby individuals were induced to deposit money with Exchange and thereby purchase notes secured by deeds of trust on real property, obtaining a promised and "secured" overall return of 10 per cent per annum

---

[1] Since a proper class action judgment is res judicata as to all members represented (*Weaver* v. *Pasadena Tournament of Roses Assn.*, 32 Cal.2d 833, 842 [198 P.2d 514]), and since, if a class action foreclosure may not properly be prosecuted herein petitioners might be deprived of property without due process of law, petitioners were correct in seeking review by prohibition. (See *Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 291 [109 P.2d 942, 132 A.L.R. 715].) Nor is a petition for writ of mandate necessarily inappropriate as a mode of review herein. (See Code Civ. Proc., § 1085.)

upon one's investment.[2] The mode of creation of the instant notes and trust deeds which involve the Newhall tract was apparently typical of the method of operation of Exchange and its cooperating companies.

As alleged in plaintiffs' complaint, on or about September 10, 1959, Los Angeles Home Company granted the undeveloped land in this tract to Villa Nipoma, Inc., who as part of the same transaction then granted the property to County-Wide Improvement Company and six other land development companies. County-Wide and the other six companies then executed and delivered to Villa Nipoma, Inc. a total of 2,139 promissory notes maturing in September 1964. The face amounts of the notes varied from $500 to $1,400, comprising a total face amount of $1,987,750. Except for the face values, the terms and conditions of each of the 2,139 notes were exactly the same. To secure payment of the latter notes, the seven development companies, as trustors, also executed and delivered 2,139 corresponding deeds of trust. Villa Nipoma, Inc. was the beneficiary of the deeds of trust, and Title Insurance and Trust Company the trustee. The development companies also conveyed title to the involved real property to Title Insurance and Trust Company to hold as trustee. All of the above companies and institutions appear to be defendants in the basic representative suit.

The owner of the beneficial interest in these trust deeds, Villa Nipoma, Inc., then transferred all of its interest in the 2,139 notes and trust deeds to Los Angeles Trust Deed and Mortgage Exchange. Plaintiffs have alleged, without contradiction from petitioners, that all of the above-described acts and transfers "were part of the same transaction; that all of the grants of land, execution of promissory notes and creation of trust deeds . . . were performed and designed by said defendants for the ultimate sale and transfer of said two thousand, one hundred and thirty-nine Notes and Deeds of Trust to the Los Angeles Trust Deed and Mortgage Exchange."

It further appears that in all probability Exchange furnished, from funds in its possession, the purchase price for the entire Newhall tract. Apparently this tract consists of

---

[2]For details of the operative relationships of Exchange with its investors, consult the extensive opinion by Judge Thurmond Clarke in *Securities & Exch. Com.* v. *Los Angeles Trust Deed & Mortgage Exch.*, 186 F.Supp. 830, and the opinion in that case by the Court of Appeals at 285 F.2d 162, wherein it was held that the notes secured by trust deeds sold by Exchange were ''securities'' under federal statutes.

three major divisions of land: (1) that portion, allegedly divided into house lots, which secures the instant 2,139 separate trust deeds; (2) areas set aside for roadways and other off-site improvements for the benefit and development of the 2,139 alleged lots; and (3) portions of land retained by County-Wide Improvement Company and the other defendant development companies (stated to be 200 acres) which may, for present purposes, be considered as unencumbered, but which may have been purchased with funds supplied by investors in Exchange. While the face amounts of the notes and trust deeds appear to have been, at the time of purchase by Exchange, considerably in excess of the actual value of the land securing the notes, land values apparently have risen so that the worth of that security now represents a major percentage of the face amounts of the notes and trust deeds.

The land securing the notes is yet "raw" land, as the off-site improvements appear not to have been undertaken by the defendant development companies. Also, the instant trust deeds provide for their subordination to construction loans, but since no construction was commenced on the Newhall tract, these remain "first" deeds of trust. While the petitioners and real parties herein appear to agree that the instant 2,139 parcels of land may be individually located and foreclosed by power of sale, it is nowhere alleged that the present subdivision plan for the Newhall tract, in a final form, has been approved by proper authorities. Concerning the separateness of these alleged lots, it is perhaps significant that the title insurance apparently is in the form of a blanket policy covering the entire land area containing the 2,139 "lots." Attorneys for real parties have stated that the instant trust deeds "are secured by parcels of land usually no more than 25 x 56 feet which are only 1/8 or 1/16 of regular lots making up an old subdivision."

The sale of this group of trust deeds by Exchange was commenced September 17, 1959, and continued until June 7, 1960. It would seem reasonable to assume that the ownership of every note and trust deed was obtained by the investors as a result of a separate transaction with Exchange. All of the 2,139 notes are in default.

Exchange was placed in receivership on June 7, 1960, by reason of numerous, continuous, and willful violations of federal securities acts in selling trust deed notes. On the latter date Exchange had in its "warehouse" account 17 unsold notes secured by trust deeds out of the instant issue

of 2,139. Those 17 notes, in face amounts between $500 and $1,400, were subsequently purchased by one Howard for $150 each.[3]

Exchange was adjudicated a bankrupt on November 28, 1960. As of the date when Exchange ceased to obtain money from investors, approximately one third of the notes secured by trust deeds and allocated to investors' accounts were not fully paid for by the investors. The bankruptcy court determined that the unpaid portions of what that court characterized as "contracts" to purchase these trust deeds were owing to the bankrupt under "executory contracts within the terms and definitions of § 70(b) of the Bankruptcy Act." The trustees in bankruptcy apparently are thus asserting that investor-owners of notes and trust deeds are debtors of the bankrupt, Exchange, to the extent of the unpaid portions of the allegedly agreed-upon purchase price of the notes and trust deeds. Petitioners allege that on the date of bankruptcy more than 90 per cent of the "trust deed notes" were held by Exchange as trustee of an express trust for the individual investors to whose accounts the notes had been allocated.

It has been stipulated by the parties presently before this court, "That the vast majority of the deeds of trust originally held by the Trustees in bankruptcy have already been assigned, transferred and delivered to the investors who had previously purchased same. The remainder of the fully-paid deeds of trust are being released and delivered to the investors who purchased same as expeditiously as possible." The stipulation continues: "That the partially-paid deeds of trust are being assigned, transferred and delivered to the original investors who purchased same upon the condition that they pay any deficiency balances due to the Trustees. In the event an investor does not pay the deficiency balance owing to the Trustees by some future date not yet determined, said deeds of trust will be sold at public auction by the Trustees for and on behalf of said investor with any money received for same going to said original investor, less that amount owed as deficiency on said deed of trust going to the Trustees." A further stipulation is "That the issue of whether the Trustees in bankruptcy should be joined as parties to the within actions will be rendered moot since by the time any of the actions proceeds to trial, the Trustees will no longer have any

[3]According to a statement on behalf of real parties in interest, Howard has elected to join plaintiffs in their attempt to sustain the instant "class foreclosure" action.

deeds of trust in their possession. Further, it is stipulated that if this Court deems that the within actions are valid representative suits pursuant to Section 382 of the Code of Civil Procedure, then the Trustees are already parties to the within actions without the necessity of formally making them parties.''

It thus presently appears that if the basic representative suit continues to trial, the trustees in bankruptcy of Exchange will assert as against the partially paid trust deed owners the claim that the latter individuals occupy debtor status as to the unpaid portions of their alleged contracts to purchase trust deed notes from Exchange. But the trustees in bankruptcy apparently will continue to hold the unreleased partially paid notes as trustees for the unpaid trust deed owners to the extent of those owners' paid-in or equitable interest therein.

In their ''Complaint For Foreclosure,'' plaintiffs alleged ''That the issues stated in this action and the questions herein to be litigated are of common and general interest to all of the owners and beneficiaries of the Deeds of Trust hereinafter described and affect all of the owners and beneficiaries of said Deeds of Trust in exactly the same manner as these named plaintiffs are affected; that because such other persons are so numerous, amounting in excess of two thousand in number, and because so many of them are not residents of this State, it is impracticable to bring all of said persons before the Court as individual plaintiffs.'' It is stipulated that the persons owning interests in the instant 2,139 trust deeds are ''numerous'' and ''ascertainable.'' Also, attorneys for real parties in interest have stated that ''[h]undreds of them have formally joined this [class foreclosure] action.''[4]

An action has also been filed in a federal court in Southern California against essentially the same individuals, companies, and corporations, as are defendants in plaintiffs' basic representative suit. According to petitioners, who are parties in the federal action, ''The complaint in said federal action alleges,

---

[4] In addition to the instant basic class foreclosure action and that involved in the companion case of *Hink* v. *Superior Court*, attorneys for real parties in interest have filed at least 15 other representative suits for judicial foreclosure, apparently on 15 other separate tracts and encompassing, according to a declaration by one of petitioners' attorneys, approximately ''7,000 trust deeds of a face value of more than $15,000,000.'' The statement has been made by attorneys for real parties, in a document filed in opposition to the instant petition, that land schemes similar to that involved herein were carried out in a total of ''approximately 147 land tracts in California.''

among other claims, a cause of action against some of the defendants named in said state court complaint for rescission of their trust deed note purchase, a cause of action against some of the said defendants under section 12 of the Securities Act of 1933, and a cause of action under the California Corporate Securities Law." It is alleged by petitioners that approximately 600 investors are plaintiffs in the federal action. Attorneys for real parties state that "some persons have voluntarily joined both litigations in the hope that one or the other, or both would prove successful."

In their complaint for class foreclosure, plaintiffs prayed that all of the land securing the instant trust deed notes be sold by a commissioner appointed by the court, "and the proceeds applied to the payment of the amount due on said Promissory Notes and Deeds of Trust. . . ." The object of the latter prayer is to facilitate sale of all of the instant separate parcels of land as one overall unit, which method of sale would appear to offer the greatest recovery on these undeveloped or "raw" parcels of land, most of which appear to lack even physical access. In this connection it has been alleged by attorneys for real parties that one Austin Montgomery has "offered to purchase all of the trust deeds from the plaintiffs and the title to the land from the defendants at a substantial sum." That such an offer was made was admitted in a verified declaration filed in this proceeding by C. Douglas Wikle, one of petitioners' attorneys.

It is alleged in a return filed by real parties in interest and verified on their behalf by one of their counsel, Harvey G. Cooper, that "the offer of compromise and purchase in this action is one to purchase all of the outstanding 2,139 trust deeds in this [Newhall] tract for the sum of $1,520,000.00 cash or the equivalent of approximately 76% of the total face value of all said trust deeds and notes." In the latter connection it is significant that petitioners have alleged that "[t]he reasonable values of the parcels of land securing the said trust deed notes through the deeds of trust vary, ranging from 20% to 70% of the face value of the notes." The latter allegation concerning differential values has been denied in a verified document filed in this proceeding on behalf of real parties in interest. The parties before this court have stipulated, "That it is probable that the land in the within tracts is more valuable as one integral unit than if the parcels are sold individually."

In his memorandum opinion sustaining the representative

foreclosure action in the companion case of *Hink* v. *Superior Court*, this day decided, *post*, p. 921 [23 Cal.Rptr. 771, 373 P.2d 859], concerning which case the parties have stipulated in effect that principles of law similar to those involved in the case at bar are applicable, Judge Patton concluded: "As a result, perhaps, of a pre-conditioned professional reflex, I was originally of the tentative view that no group action of any kind would constitutionally be permitted to bind a dissident interested party who appears in the case. I am now persuaded that no such ironclad prohibition exists, and that we are free to follow whichever procedure appears to offer the most practical approach to our problems. The essence of 'due process' is notice and an opportunity to be heard. This can be accorded every interested party, regardless of how we proceed. . . . The constitution does not guarantee any particular remedy. We can assume that what any victim of this fantastic 'ten-percenter' operation really wants most is to get as much of his money back as possible, and that, by his non-appearance, he manifests his indifference as to the particular methods we may follow to achieve that end. The doctrine of 'virtual representation' always involves a certain element of legal fiction. No man who has, or thinks he has, a claim against another, is really willing to be bound by an *adverse* judgment in any lawsuit brought by someone else as his 'virtual' representative. Factors of convenience and practicability are permitted to override the individual claimant's reluctance whenever any 'class' action is allowed. These factors are as evident in the case before us as in any class action that I have seen approved in the books."

Petitioners contend that there is no community of interest among the individual investors whom plaintiffs seek to represent that will support a class suit. The latter contention is based upon the statement in *Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, 837, that in class suits in California "it has been uniformly held that there must be a well-defined 'community of interest' in the questions of law and fact involved as affecting the parties to be represented." The latter holding was an interpretation of section 382 of the Code of Civil Procedure, which forms the statutory basis for class suits in California. Section 382 provides: ". . . when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

It is argued by petitioners that since these are separate notes secured by separate deeds of trust, each deed of trust covers a separate parcel of property, and every note and trust deed was sold to its owner in a separate transaction with Los Angeles Trust Deed and Mortgage Exchange, it must follow that every investor has an entirely separate and distinct cause of action so that the necessary community of interest to sustain a representative suit is not present herein. However, while petitioners appear to be correct as to the latter contentions concerning elements of "separateness" herein (although it is not entirely clear that every parcel is a *separately saleable* building lot), it is not apparent that the intended "class plaintiffs" possess the kind of separate and distinct claims that *preclude* the sustaining of a representative suit. It was indicated in *Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, 838-840, 842-843, that for related causes of action to preclude representative litigation they must be separate and distinct in the sense that every member of the alleged class would have to litigate numerous and substantial questions determining his individual right to recover against the named defendant or defendants following the rendering of a "class judgment" which determined in plaintiffs' favor whatever questions were common among the plaintiffs sought to be represented as a class. (Accord: *Barber* v. *California Emp. Stab. Com.,* 130 Cal.App.2d 7, 15 [278 P.2d 762]; see 6 Stan.L.Rev. 120, 128; cf. *Noroian* v. *Bennett,* 179 Cal. 806, 808-810 [179 P. 158].) As stated by another authority, the community of interest requirement is lacking and separate and distinct claims present, in those situations "where each member of the class must establish his right to recover on the basis of facts peculiar to his own case." (1 Chadbourn, Grossman, Van Alstyne, California Pleading (1961) Class Actions, § 635, p. 543; see *Price* v. *Communications Workers of America,* 167 Cal.App.2d 524, 532-533 [334 P.2d 632]; *Watson* v. *Santa Carmelita Mut. Water Co.,* 58 Cal.App.2d 709, 718-719 [137 P.2d 757]; *Goodspeed* v. *Great Western Power Co.,* 19 Cal.App.2d 435, 443-444 [65 P.2d 1342]; *Ballin* v. *Los Angeles County Fair,* 43 Cal.App.2d Supp. 884, 887-888 [111 P.2d 753]; 71 Harv.L.Rev. 874, 938-939.)

 While the notes and trust deeds involved herein are separate; are secured by allegedly separate parcels of property, and were acquired through Exchange in apparently separate transactions, there are also present a number of

questions common to all of these owners of notes secured by trust deeds upon parcels in the Newhall tract. All of the instant trust deeds and notes were created and transferred to Exchange in the same overall transaction, all of the notes and all of the trust deeds are identical as to conditions and provisions, differing only as to face amounts, and all of the allegedly separate "lots" are situated within the same tract of land and apparently are in the same state of development. It would thus appear that whatever defenses may be asserted or sustained by defendants in the basic action against any one or group of the owners of these 2,139 trust deed notes may be asserted against all such holders, and it has in effect been so stipulated by the parties presently before this court. Because of the essentially similar legal positions of the instant investor-claimants in relation to the defendants in the basic action (see 67 Harv.L.Rev. 1059), it would not seem necessary for each member of the instant class to establish his right to recover as against the defendants upon facts peculiar to his own case, so that the "community of interest" in questions of law and fact necessary to sustain a class action is present herein.[5] (See *Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, 837; *Brenner* v. *Title Guarantee & Trust Co.,* 276 N.Y. 230, 236 [11 N.E.2d 890, 114 A.L.R. 1010]; 1 Pomeroy, Equity Jurisprudence (5th ed. 1941) § 269, pp. 598-600.)

Furthermore, it is apparent that there are important factual-legal issues which must be determined on behalf of this entire group of plaintiffs. It is stated that the defendants intend to assert that these are "purchase money deeds of trust," with a view to limiting these investors to recovery solely against the individual parcels of land and precluding imposition of a constructive trust upon the defendants' unencumbered land for recovery of any deficiencies following foreclosure of their deeds of trust. All of the owners of the instant 2,139 trust deeds have a common and vital interest in securing a determination that they are not so limited as the holders of purchase money deeds of trust, and in solving any problems of tracing their funds which petitioners and real parties allege were used to purchase defendants' unencumbered land within the Newhall tract. Also, while the

---

[5]It has been stipulated "That in the within actions there are common questions of law and fact with all of the deeds of trust being in default and the issues to be decided by the Court and the defenses of the defendants being the same for all of the investors in each tract."

owners who have fully paid for their notes and trust deeds are not subject to the claim by the trustees in bankruptcy of Exchange that unpaid portions of the ''purchase price'' under the alleged executory contracts for acquisition of notes and trust deeds are assets of the bankrupt, the approximately 700 individuals who are potentially subject to such a claim have a strong common interest in resisting debtor status in relation to Exchange.

It now appears that the trustees in bankruptcy of Exchange will be among the ''class plaintiffs'' in any representative suit and, as indicated above, the trustees probably will assert claims against the partially paid investor-plaintiffs adverse to the interests of the latter group of investors. However, such a contest would appear to be merely an intra-class conflict over division of the proceeds available from any liability of defendants, a question to be determined subsequent to adjudication concerning defendants' liability or liabilities. It is not unusual for class actions to involve such subsidiary questions wherein individual creditors or groups thereof contest issues among themselves after common questions as to basic liability have been settled. (See Chaffee, Some Problems of Equity (1950) Representative Suits, pp. 209, 223; 71 Harv. L.Rev. 874, 938, fn. 465; 6 Stan.L.Rev. 120, 130.)

It is next argued that the case of *Baumann* v. *Harrison,* 46 Cal.App.2d 84 [115 P.2d 530], upon which plaintiffs and real parties in interest allegedly based the instant class foreclosure suit, is not in point and ''bears only a superficial resemblance to the instant case.'' In *Baumann,* a class suit was sustained wherein a single plaintiff, holding four notes, sought to foreclose one deed of trust which secured 225 promissory notes. The suit was on behalf of the named plaintiff and all of the other holders of the 225 notes. (See 46 Cal. App.2d at pp. 88-89.) Petitioners urge that since only one deed of trust was involved in the *Baumann* case, so that all of the notes there involved were secured by the same parcel of real property, *Baumann* is inapplicable to the instant situation where all of the 2,139 notes are secured by separate deeds of trust on allegedly separate parcels of land.

However, while the situation present in the *Baumann* case is distinguishable in some particulars, it is difficult to perceive an essential difference between owning an interest in a deed of trust secured by four (undivided) parts of land out of 229 parts in the total parcel, and owning a deed of trust secured by an allegedly separate parcel of land which in practical

effect cannot be considered as entirely separate from the other 2,138 "lots" in the Newhall tract. Thus the *Baumann* case may be considered authority for the instant class foreclosure suit (see also *Blair* v. *Shelby County Agricultural & Joint Stock Assn.*, 28 Ind. 175, 177-178; *Bardstown & Louisville R.R. Co.* v. *Metcalfe,* 61 Ky. (4 Metc. 199) 180, 184-185 [81 Am. Dec. 541]), although "a determination of whether a particular plaintiff can fairly protect the rights of the group he purports to represent is necessarily dependent upon the facts and circumstances of each case." (*Bowles* v. *Superior Court,* 44 Cal.2d 574, 587 [283 P.2d 704]; see 1 Chadbourn, Grossman, Van Alstyne, California Pleading (1961) Class Actions, § 632, p. 541; 67 Harv.L.Rev. 1059, 1068.)

 Petitioners also contend that a "common fund" is necessary to sustain a class action in this jurisdiction, and that because of the separateness of the notes, the trust deeds, and the alleged separateness of the parcels of land, the instant case does not involve a "common fund." But it appears that the "common fund" requirement is merely another way of stating the requirement of a "community of interest" among the class sought to be represented (see *Bowles* v. *Superior Court, supra,* 44 Cal.2d 574, 587 [20]; *City & County of San Francisco* v. *Market St. Ry. Co.,* 95 Cal.App.2d 648, 653-654 [213 P.2d 780]; 1 Chadbourn, Grossman, Van Alstyne, California Pleading, p. 545; 6 Stan.L.Rev. 120, 126-127, 131), and the statement indicating the necessity of such actual fund or property in *Price* v. *Communications Workers of America, supra,* 167 Cal.App.2d 524, 528 [3], is hereby disapproved, as is language of like import in *Watson* v. *Santa Carmelita Mut. Water Co., supra,* 58 Cal.App.2d 709, 718-719 [13]. As we have hereinbefore pointed out, the requisite "community of interest" is present among the individuals sought to be represented by the device of a class action.

It is next contended by petitioners that if the basic action is allowed to proceed to a judgment effecting a "class foreclosure," they and other dissenters within the class will be deprived of property without due process of law. It is argued that since in California a judgment in a representative suit is res judicata as to claims of members of the class represented (see *Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, 842-843; *DeMonbrun* v. *Sheet Metal Workers Intl. Assn.,* 140 Cal.App.2d 546, 555 [295 P.2d 881]; *King* v. *International Union etc. Engineers,* 114 Cal.App.2d 159, 164-165 [250 P.2d 11]; *Fallon* v. *Superior Court,* 33 Cal.App.2d

48, 50 [90 P.2d 858] ; 23 So.Cal.L.Rev. 285, 287), the judgment on behalf of the class would unconstitutionally deprive the dissenters of property because they will have been represented by individuals who had interests in conflict with their interests.

But while due process of law may not be accorded where individual plaintiffs are allowed to secure a judgment on behalf of a class which includes persons whose legal interests are directly opposed to those of the representing plaintiffs (*Horton* v. *Citizens Nat. T. & S. Bank,* 86 Cal.App.2d 680, 684-686 [195 P.2d 494] ; see *Hansberry* v. *Lee,* 311 U.S. 32, 44-45 [61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741] ; *Price* v. *Communications Workers of America, supra,* 167 Cal.App.2d 524, 533), in the instant basic action the conflict within the class is merely a difference of opinion as to the most effective remedy to be pursued against the defendants and the property involved. Petitioners apparently wish to proceed with the action filed in the federal court, wherein a cause of action for rescission is stated as well as causes of action under federal and state securities acts, and they appear to be concerned that a successful class foreclosure herein would adversely affect recovery upon rights asserted in the federal action.

However, even if it were possible, notwithstanding the present undeveloped state of the respective records and rulings in the basic state action and in the action filed in the federal court, to determine the complex questions of the possible effects of the instant representative foreclosure suit upon the federal suit for rescission and damages, it does not appear that the instant petitioners or any other dissenters would be legally deprived of property without due process of law even if (as now appears unlikely) a class foreclosure suit or decree completely precluded the assertion of all causes of action or supplementary remedies potentially available in the federal court action (or in any supplementary state action).

All of the owners of the instant 2,139 notes secured by trust deeds are, essentially, creditors of a savings or investment institution, and a creditor has "no property right, in the constitutional sense, in any form of remedy." (See *Carpenter* v. *Pacific Mut. Life Ins. Co.,* 10 Cal.2d 307, 335 [74 P.2d 761] ; accord: *Gibbes* v. *Zimmerman,* 290 U.S. 326, 332 [54 S.Ct. 140, 78 L.Ed. 342] ; 7 Lawson, Rights, Remedies, and Practice (1890) § 3865, pp. 6084-6087.) The reason for such a doctrine is apparent in the light of bankruptcy and other such familiar proceedings wherein a creditor may not be

allowed to pursue a particular remedy and must be content with a means of redress which may be efficacious only as to a group of creditors as a whole. (See, e.g. *Brainard* v. *Fitzgerald,* 3 Cal.2d 157, 163 [44 P.2d 336] [assignment for benefit of creditors prevails over subsequent attachment by nonconsenting creditor so as to remove from debtor's ownership any property upon which nonconsenting creditor might have levied]; Treister, *The Avoiding Powers of a Trustee in Bankruptcy,* L. A. Bar Bulletin (Oct. 1958) p. 357.) In addition, it would especially appear that creditors of such an openly speculative scheme as that of Exchange, which offered a 10 per cent return when other investment institutions promised substantially lower rates of return, must be held to be on notice of possible financial failures with attendant limitation on individual remedies.[6]

 Furthermore, all of the members of the instant class are ascertainable (compare with *Weaver* v. *Pasadena Tournament of Roses Assn, supra,* 32 Cal.2d 833, 839-840, 843), and it is assumed that they will be given notice of the pending class foreclosure action by registered mail or other like reliable method (see 67 Harv.L.Rev. 1059, 1064), thereby being afforded an opportunity to decide whether to appear and argue for any and all appropriate or available forms of redress desirable from their individual points of view, against the named defendants. (See *Heffernan* v. *Bennett & Armour,* 110 Cal.App.2d 564, 589-590 [243 P.2d 846]; Chafee, Some Problems of Equity (1950) pp. 230-231; Pomeroy, Code Remedies (5th ed. 1929) § 297, p. 448; 71 Harv.L.Rev. 874, 937, 939.) The essentials of due process of law in class suits would appear to be afforded by fair representation in the assertion of claims of class members against the opposing parties in any lawsuit, and notice of the pending suit. (See *Hansberry* v. *Lee, supra,* 311 U.S. 32, 42-44; *Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, 837, 839 [3][5]; *Fanucchi* v. *Coberly-West Co.,* 151 Cal. App.2d 72, 80-81 [311 P.2d 33]; 67 Harv.L.Rev. 1059 et seq.)

[6]The fundamental principle of equal treatment has been well stated in Glenn, Rights and Remedies of Creditors (1915), as follows: "[W]hen the debtor is insolvent the right of all the creditors is to an equal distribution of the assets, and the rights of each creditor end with his *pro rata* portion. It is not fair that one creditor should be paid more than another. They are all of the same class and they should all suffer equally. It is the universal recognition of this right, however imperfectly expressed or taken for granted it may be in decisions and legislation, that has created the body of law which we may describe under the head of creditors' rights." (Glenn at § 283, p. 222.)

As indicated above, both of the latter elements are present herein.

In addition, the land involved herein appears to be the major asset to satisfy any judgments secured by the investors, and it has been stipulated by all parties in the instant proceeding "That it is probable that the land in the within tracts is more valuable as one integral unit than if the parcels are sold individually." The instant class foreclosure action is the only procedure presently suggested to be readily available by which all of the parcels of land securing the present 2,139 trust deed notes may be sold as a unit. (See 18 Cal.Jur.2d, Equity, § 7, pp. 147-148; 71 Harv.L.Rev. 874, 938.) The land would appear to be properly in the custody of respondent superior court (*Tutt* v. *Davis,* 13 Cal.App. 715, 718-719 [110 P. 690]; Code Civ. Proc., § 726; see *Heffernan* v. *Bennett & Armour, supra,* 110 Cal.App.2d 564, 590; De Funiak, Handbook of Modern Equity (2d ed. 1956) § 7, p. 13; Walsh, A Treatise on Equity (1930) § 12, pp. 51-52; Waples, Proceedings in Rem (1882) § 83, pp. 117-118; 70 Harv. L.Rev. 1257, 1260-1261), and thus subject to disposition by that court, as a court of equity, in a manner ensuring maximum possible protection to the rights of all concerned. (See *Kirkpatrick* v. *Stelling,* 36 Cal.App.2d 658, 668 [98 P.2d 566]; 6 Stan.L.Rev. 120, 136, 144.) As held in *Weaver* v. *Pasadena Tournament of Roses Assn., supra,* 32 Cal.2d 833, 837, "the doctrine of virtual representation . . . 'rests upon considerations of necessity and paramount convenience, and was adopted to prevent a failure of justice.' " (See Chafee, Some Problems of Equity (1950) p. 231.)

It is also apparent that it is impracticable to bring all of the over 2,000 investors before the court other than by a class action. (See Code Civ. Proc., § 382; *Goldman* v. *County of Santa Barbara,* 203 Cal.App.2d 454, 457 [21 Cal.Rptr. 532]; *Price* v. *Communications Workers of America, supra,* 167 Cal.App.2d 524, 528; *Peterson* v. *Donelley,* 33 Cal. App.2d 133, 136-137 [91 P.2d 123]; cf. *Gorman* v. *Russell,* 14 Cal. 531, 539.)

Numerous additional contentions and arguments need not be considered in view of our present holding that the instant representative suit is a valid class action pursuant to section 382 of the Code of Civil Procedure, so that any foreclosure action will not, because of its class nature, result in deprivation of property without due process of law as to any

members of this group of owners of the 2,139 notes secured by trust deeds on parcels of land in the Newhall tract.

For the foregoing reasons, the demurrer to the petition is sustained; the alternative writs of mandate and prohibition heretofore issued are discharged, and the petition for the peremptory writs of mandate and prohibition is denied.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., and Peters, J., concurred.