[Civ. No. 11717. Third Dist. Aug. 26, 1968.]

SLAKEY BROTHERS SACRAMENTO, INC., et al., Plaintiffs and Appellants, v. JAY PARKER et al., Defendants and Respondents.

Howard, Prim, Smith, Rich & Downs, Howard M. Downs, N. Richard Smith and Stuart R. Pollak for Plaintiffs and Appellants.

William P. Dwyer, Jr., in pro. per., O'Melveny & Myers, Diepenbrock, Wulff & Plant, Forrest A. Plant, Bennett W. Priest, Archibald M. Mull, Jr., Gibson, Dunn & Crutcher, Julian O. von Kalinowski and Irwin F. Woodland for Defendants and Respondents.

FRIEDMAN, Acting P. J.—Plaintiffs allege that they constitute 26 out of 48 creditors of Jay Parker, an insolvent subdivider. They sue individually and as members of a class consisting of themselves and the other 22 creditors. In addition to Parker and his wife, defendants are West Coast Savings and Loan Association (and several associated firms and individuals), a named firm of certified public accountants, and William P. Dwyer, an attorney. Successive demurrers were sustained to two successive complaints. Demurrers to plaintiffs' second amended complaint were overruled in part and sustained in part. The trial court held that plaintiffs could not maintain a class action, sustained demurrers without leave to amend to that aspect of their pleading and entered judgment of dismissal of the class suit. Mr. Dwyer's general demurrer was also sustained without leave to amend and judgment in his favor entered. [See fn. 1] Plaintiffs appeal from the judgment.[1]

---

[1] The ruling on demurrer kept plaintiffs in court as individuals but not as a class, as against defendants other than Dwyer. Although the judg-

The second amended complaint is unnecessarily prolix and avoidably complex.[2] Its central story is relatively simple and not beyond succinct summarization: Between 1957 and 1963 West Coast Savings and Loan supplied financing, aggregating over $9,000,000, for Parker's various subdivision developments. These loans allegedly exceeded legal limitations and were in part diverted to improper purposes. Parker arrived at the edge of insolvency. Plaintiffs, his creditors, were alarmed and threatened individual action, but West Coast and the other defendants conspired with Parker to defraud them. By concealing Parker's financial peril and by falsely optimistic assurances, defendants induced plaintiffs to forbear collection and even to advance more credit. Eventually these fraudulent representations caused plaintiffs to sell their claims to Great Western Financial Corporation (an affiliate of West Coast Savings and Loan) at $37\frac{1}{2}$ percent of face value. The alleged class of creditors sues for $809,837.02 in general damages (a sum equivalent to $62\frac{1}{2}$ percent of the aggregate of Parker's debts to them) plus interest, plus $1,000,000 in exemplary damages and an award of attorney fees. In addition, four of the named plaintiffs seek special damages aggregating $1,050,488.12.

Plaintiffs contend that the trial court erred in refusing the lawsuit's continuance as a class action. Code of Civil Procedure section 382 permits a class suit ". . . when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is imprac-

ment of dismissal did not finally adjudicate plaintiffs' rights as individuals, it effectually dismissed the action as to all members of the class other than plaintiffs, hence formed an appealable final judgment. (*Daar v. Yellow Cab Co.*, 67 Cal.2d 695, 698 [63 Cal.Rptr. 724, 433 P.2d 732].)

[2]Disposing of the demurrers in a careful and detailed memorandum opinion, the trial judge was moved to the following comment: ". . . The court is now asked to consider some 623 pages of complaint, demurrers, motions, memorandums, reply, rebuttal and re-rebuttal memorandums, garnished with appendices, attachments, exhibits, and references to superseded pleadings and previous memorandums, and other such 'confections and delicatessens' as Rabelais bids every good judge to 'carefully view, read, reread, shuffle and leaf through.' (Quoted in Curtis and Greenslet, The Practical Cogitator 413 (1953).) . . . The prime contributor to this groaning board of verbosity is the complaint, now swollen to 235 pages in the second amendment and requiring consideration of an additional 12 or more pages in the original complaint and the first amendment. Even the plaintiffs acknowledge its 'unwieldiness'. . . . The principal narrative inadequacy is the absence of coherent order. . . . Of course, there can be differences of opinion as to what is the 'natural order', but as good an order as any to tell the tortuous story of a complicated conspiracy to defraud is chronological. . . ."

ticable to bring them all before the Court. . . .'' California case law posits two prerequisites of a class action: first, an ascertainable class, and second, a well-defined community of interest in the questions of law and fact affecting the parties to be represented. (*Gerhard* v. *Stephens,* 68 Cal.2d 864 912-913 [69 Cal.Rptr. 612, 442 P.2d 692]; *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 703.) A common recovery or a common fund is not a prerequisite of a class action. (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 706.) Nevertheless, when each individual's right to recover depends upon facts peculiar to his own case, the individuals cannot be brought under the umbrella of a class action. (*Ibid.,* p. 704; *Chance* v. *Superior Court,* 58 Cal.2d 275, 285 [23 Cal.Rptr. 761, 373 P.2d 849].)

In order to compare the areas of collective and of individualized issues of law or fact affecting recovery, closer consideration of the complaint is necessary. Essentially, the action seeks damages for deceit. It alleges a conspiracy to defraud, in which each conspirator would be fastened with fraudulent representations made by his coconspirators. In his memorandum opinion the trial judge formulated a general description of the allegations of misrepresentation, a description which we adopt: ''The misrepresentations were in every form known to the law: false statements, both oral and written, of fact, intention, opinion and law, made deliberately or negligently; concealment of the truth when there was a duty to disclose; and statements, possibly not actionable in themselves, which may have been the basis of inducing a belief in the truth of the actionable misrepresentations. . . . Their number and variety would make summarization a formidable task. Their dispersion in the complaint makes it an impossible one. . . .

''The modes of communication of the misrepresentations also exhaust the legal possibilities. Some were made to some plaintiffs with the intent that they be repeated to others . . .; some were made to the plaintiffs as a group . . .; and some were made in reports to public officers. . . . However made originally, the complaint alleges that 'each of the [*sic*] such representations was so (?) communicated to each of the Aggrieved Creditors' . . . and, of course, that the plaintiffs' reliance on the representations was reasonable and justifiable. . . .''

An essential element in recovery for deceit is proof of the plaintiff's justifiable reliance on the defendant's fraudu-

lent representations. (Civ. Code, § 1709; *Gonsalves* v. *Hodgson*, 38 Cal.2d 91, 100-101 [237 P.2d 656]; *Cohen* v. *Citizens Nat. Trust etc. Bank,* 143 Cal.App.2d 480, 484 [300 P.2d 14].) A party cannot be defrauded by misrepresentations which never reached him and of which he had no knowledge at the time of his loss. (*Bank of St. Helena* v. *Lilienthal-Brayton Co.,* 89 Cal.App. 258, 263 [264 P. 546]; 23 Cal.Jur.2d 72.) Knowledge and reliance are subjective elements, requiring direct or circumstantial proof of state of mind. Conceivably, collective reliance by all members of a group could be proved circumstantially, through evidence that its members responded collectively to a directly communicated falsehood. (See *Wennerholm* v. *Stanford University School of Medicine,* 20 Cal.2d 713, 716 [128 P.2d 522, 141 A.L.R. 1358].)

The present complaint alleges some misrepresentations made to the entire group of creditors, plus at least 17 falsehoods communicated to individual creditors and noncreditors. Recovery for the loss suffered by any one creditor will require him to come forward with evidence of falsehoods which actually reached him and of his reliance on them. Absence of such proof will result in a corresponding reduction of recovery. Thus recovery depends upon facts peculiar to the individual, a factor militating against a class suit.

Plaintiffs rely upon Civil Code section 1711, which declares: "One who practices a deceit with intent to defraud the public, or a particular class of persons, is deemed to have intended to defraud every individual in that class, who is actually misled by the deceit." Section 1711 permits an inference of fraudulent intent toward any one individual within the class upon evidence that the individual was actually misled. The need for such evidence points up the individualized character of proof of actual misleading when representations are made to some but not all members of a group. (See *Shell* v. *Schmidt,* 126 Cal.App.2d 279, 289 [272 P.2d 82]; cf. *Wennerholm* v. *Stanford University School of Medicine, supra.*)

Plaintiffs rely upon *Fanucchi* v. *Coberly-West Co.,* 151 Cal. App.2d 72 [311 P.2d 33], a class damage action on behalf of growers who had delivered raw cotton to a ginning company over a period of years and who sought recovery for underpayments for their intermingled cottonseed. *Fanucchi* is not a persuasive precedent. As the court noted, 151 Cal.App.2d at page 83, there was no variation in the proof applicable to the individual members of the class, merely a problem of distrib-

uting among them a common fund wrongfully withheld from all. The differences between this case and *Fanucchi* are obvious and pivotal. The present suit is not aimed at recovery of a single asset or common fund belonging collectively to an entire group, which may be distributed among the entitled members after the award. The objective of recovery here is an aggregation of individual tort damage claims, demonstrable in large part by individualized proof.[3]

There exist here, to be sure, common issues of law and fact which affect the entitlement of all the creditors, including alleged misrepresentations addressed to the group collectively. Where the issues are partly individual, partly collective, substantial benefits to the litigants and the court may justify a class action. (*Gerhard* v. *Stephens, supra,* 68 Cal.2d at p. 913.) The number of absent creditors, 22, is not large enough to cause great procedural obstacles. Compared with their joinder as individual plaintiffs or plaintiffs in intervention, the class suit offers thin, if any, savings of time, labor and expense. Potential recovery per individual is substantial. The smallest nonsuing creditor would be eligible for general damages of 62½ percent of approximately $4,000; the largest, 62½ percent of about $132,000. Unavailability of a class suit does not create a practical barrier to recovery

---

[3] The *Fanucchi* opinion apparently viewed the action as one sounding in tort. (151 Cal.App.2d at p. 83.) A text writer suggests that *Fanucchi* ''may well foreshadow a broadened use of the class suit in tort actions.'' (1 Chadbourn, Grossman & Van Alstyne, California Pleading, p. 550.) Possibly *Fanucchi* sounded in *assumpsit* rather than tort. If so, the following dictum in *Weaver* v. *Pasadena Tournament of Roses Assn.,* 32 Cal.2d 833, 840 [198 P.2d 514], would stand undisturbed: ''. . . independent research has failed to reveal, a single case in which it has been held that a representative or class suit was a proper or appropriate vehicle for the determination of alleged tort liability of defendants to numerous unnamed and unascertained persons.''

The fact that no California decision has yet sustained a representative suit for collective deceit does not, of course, mean that such a suit will never be sustained. The general unsuitability of a class action for recovery of composite fraud damages is indicated by the following dictum in *Most Worshipful Sons etc. Lodge* v. *Sons etc. Lodge,* 118 Cal.App.2d 78, 89 [257 P.2d 464]: ''The claims that the former lodge members have to a return of their moneys, if any they have, or to damages because of the misrepresentations . . . would be individual claims, requiring proof that each individual joined his respective lodge solely because of such representations and left solely because of such falsity, and the amount of moneys paid in by each such member. There might even be an offset in favor of the lodge for the benefit, if any, such member might have received while in the lodge. While such a claim could be assigned for suit purposes, it could not be recovered in a representative action. (See *Noroian* v. *Bennett,* 179 Cal. 806 [179 P. 158]; 114 A.L.R. 1015.)''

where the amount of each individual recovery is substantial and separate actions are economically feasible. (Cf., *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 714.) There is no assertion that the absent creditors were unaware of their own claims or incapable of pursuing them. Where nonsuing creditors have substantial individual claims and no inability to make their own choices, only the most impelling considerations should dragoon them into a lawsuit not of their own choosing. (See 6 Stan.L.Rev. 120, 134.)

Plaintiffs rely by analogy upon the class suit concept embodied in rule 23(b)(3) of the Federal Rules of Civil Procedure and upon the notes of its drafting committee, suggesting its availability for fraud perpetrated upon a class. (See 28 U.S.C.A., Fed. Rules Civ. Proc., rule 23, 1967 pocket part.) Whether the federal rule would demand judicial acceptance of the present class action is problematical. California criteria demonstrate propriety of the trial court's rejection.

Next, plaintiffs charge error in the order sustaining defendant Dwyer's general demurrer without leave to amend. The complaint, as amended, alleges generally that all defendants conspired to defraud plaintiffs ''as alleged hereinbelow.'' At a later point it alleges that Dwyer, attorney for Parker, ''at all times herein, had knowledge of the facts set forth herein, and did participate in said conspiracy by knowlingly, willfully, and with the intent to deceive, participating as an undisclosed agent in the Barmby Ranch transaction as set forth in Paragraph XIX below, and by making the false representation set forth in paragraph XVII (q) below.''

In paragraph XIX the complaint charged that Dwyer, as undisclosed agent of Parker, borrowed $1,304,600 from West Coast Savings in July 1961, securing the loan with an unimproved tract called the Barmby Ranch, which was worth no more than $500,000; that the borrowed money was used to reduce Parker's delinquent obligations to West Coast Savings; that the purpose of the transaction was to protect West Coast Savings at the expense of plaintiffs, to frustrate plaintiffs' attachment of the loan proceeds, to prevent institution of bankruptcy proceedings and to conceal the delinquent loans on West Coast's books from the public authorities. The trial court correctly concluded that, whatever prejudice the Barmby Ranch inflicted on West Coast shareholders or the regulatory agencies, the complaint failed to show that it deceived or damaged plaintiffs. The court pointed out that, on the face of the matter, the transaction reduced Parker's

delinquencies instead of concealing them from his creditors; that plaintiffs did not allege that they were about to attach anything, including the proceeds of the Barmby Ranch loan; that no one was obliged to reveal attachable property to them; that the creditors could have no builders' liens on the unimproved Barmby Ranch and were deprived of none.

The other so-called false representation charged to Dwyer occurred in a letter of March 20, 1961, which he addressed to a person alleged to represent creditors. The offending statement is quoted in the complaint and reproduced in the margin.[4] It is nothing more than a declaration that Parker was attempting to refinance with the objective of full payment to the creditors. It conveys no assurance that Parker would succeed in that objective. It was a plea for time, a plea which any creditor could take or leave. The trial court correctly concluded that Dwyer's letter of March 1961 did not form an actionable falsehood.

Plaintiffs point to the doctrine that a party to a conspiracy to defraud is fastened with the falsities uttered by his companions, arguing that the general allegation of conspiracy by all the defendants should be sufficient to fasten Dwyer with his codefendants' falsities. The complaint, however, alleges that Dwyer participated in the conspiracy in two respects: the Barmby Ranch transaction and the letter of March 1961. This allegation of Dwyer's limited participation in the conspiracy contrasts strongly with the allegation of unlimited participation by the group of defendants. As an assertion of Dwyer's personal participation in his codefendants' conspiracy, the complaint is at best equivocal. At worst, the allegation of limited involvement is pregnant with an admission against unlimited involvement. In view of the law's demand for specific pleading of fraudulent conduct, plaintiffs' second amended complaint was vulnerable to Dwyer's general demurrer. (2 Chadbourn, Grossman & Van Alstyne, California Pleading, § 982, p. 69, note 20.) Such a pleading condition would ordinarily call for an order sustaining the general demurrer with leave to amend. Plaintiffs, however, had twice

---

[4]The letter stated: ''Mr. Parker has been working night and day away from home and living in hotels in an attempt to refinance his operation so that the creditors will receive 100¢ on the dollar and in addition Mr. Parker will be able to continue in business to the further subsequent benefit of the creditors. If Mr. Parker is pushed too hard and throws in the sponge the creditors will receive substantially less than 100¢ on the dollar and how much less is anybody's guess.''

been permitted to amend their complaint after general and special demurrers were sustained. Thus the trial court's denial of leave to amend as to Dwyer was not an abuse of discretion. (2 Witkin, Cal. Procedure (1954), Pleading, § 506.)

Judgment affirmed.

Regan, J., and Bray, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 23, 1968.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.