CITY SOLUTIONS INC,
Plaintiff–Appellee,

v.

CLEAR CHANNEL COMMUNICA-
TIONS, Inc.; Eller Media Inc; Ad-
shel Inc., Defendants–Appellants.

City Solutions Inc, Plaintiff–Appellant,

v.

Clear Channel Communications, Inc.;
Eller Media Inc; Adshel Inc.,
Defendants–Appellees.

Nos. 03–15249, 03–15321.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 2004.

Filed April 23, 2004.

Nelson E. Brestoff, Moskowitz, Brestoff, Winston & Blinderman LLP, Los Angeles, California, for the plaintiff-appellee-cross-appellant.

Daniel S. Mason and Scott R. Campbell, Zelle, Hofmann, Voelbel, Mason & Gette LLP, San Francisco, California, for the defendants-appellants-cross-appellees.

Before: HUG, ALARCÓN, and W. FLETCHER, Circuit Judges.

ALARCÓN, Circuit Judge:

City Solutions, Inc. ("CSI"), a Florida-based company specializing in the modular news rack business, appeals from the judg-

ment of the district court granting the motion for a judgment as a matter of law ("JMOL") filed by Eller Media Company ("Eller"), an Arizona-based outdoor advertisement firm.[1] The court set aside the jury's verdict in favor of CSI on a claim of fraud in which the jury awarded damages in the amount of $9 million. Eller cross appeals from the denial of its motion for JMOL on a claim of unfair competition in which the jury awarded damages in the amount of $800,000, and in the alternative, for a new trial.

We hold that the district court properly denied Eller's motion for a new trial and its motion for judgment as a matter of law as to the common law unfair competition claim. We also conclude that the district court erred in granting Eller's motion for judgment as a matter of law on CSI's fraud claim. CSI also appealed from the order granting summary judgment in favor of Eller on its claims for breach of an oral joint venture agreement and breach of fiduciary duty. We do not reach the merits of these claims, however, because CSI informed the court in a letter dated March 29, 2004 that "if both the $9 million and the $800,000 jury verdicts are upheld, there is no need for you to decide the summary judgment issues."

## I

This case arises out of a dispute between the parties over an alleged oral agreement to submit a joint bid in response to the City of San Francisco's ("City") March 12, 1998 request for proposals ("RFP") for a citywide news rack project. The City sought bids from vendors to provide one thousand modular news racks at no cost to the City. In return, the City proposed that the vendor would be allowed to include advertising on the sides of the news racks and potentially allowed access to freestanding advertising in the City.

Representatives of Eller and CSI met on at least four separate occasions between March 31, 1998, and May 26, 1998. It is undisputed that the parties discussed entering into a joint venture in order to bid on the City's RFP. It is also undisputed that the parties engaged in preliminary negotiations over the specific terms of their future business relationship to take effect if their joint proposal was selected by the City. The parties signed a written confidentiality agreement after their second meeting. They began working together on a proposal in response to the City's RFP after their third meeting. The parties also requested that their lawyers draft a term sheet for a written contract to cover their potential future business relationship. What is disputed by the parties, however, is whether they agreed to enter into an oral joint agreement to submit a bid to the City.

After the parties began discussions, representatives of Eller informed CSI that its parent company, Clear Channel, was in the process of acquiring Adshel, with whom Eller might be required to work on future projects. Clear Channel acquired Adshel on May 21, 1998. Representatives of CSI and Eller met for the final time on May 26, 1998. Clear Channel's acquisition of Adshel was not discussed with CSI's representatives. On June 3, 1998, Eller terminated its relationship with CSI and teamed up with Adshel to submit a timely bid in response to the City's RFP. With less than two weeks remaining before the June 15 deadline for the submission of a bid in response to the RFP, CSI entered into an

---

1. CSI sued Eller, as well as Clear Channel Communications, Inc. ("Clear Channel"), Eller's parent company and Adshel, Inc. ("Adshel"), another of Clear Channel's subsidiaries. The claims against Eller are the only ones that remain on appeal.

agreement with two other San Francisco-based companies and submitted a joint proposal to the City. The Eller–Adshel Alliance received a score of 466 points in the competitive bidding process, out of 500 possible points. The CSI bid received a score of 390 points. The City selected the Eller–Adshel Alliance proposal and awarded it the exclusive right to negotiate a contract to provide modular news racks throughout the City.

## II

CSI filed this action on December 9, 1998, in a California state court, seeking damages for breach of an oral joint venture agreement, breach of fiduciary duty, breach of a written confidentiality agreement, fraud and deceit, interference with a contract, common law unfair competition, and violation of the California Uniform Trade Secrets Act ("UTSA"). *See* Cal. Civ.Code §§ 3426–3426.11. Eller timely removed the action to federal court pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1332(a).

Eller filed a motion for summary judgment. The district court granted Eller's motion to dismiss CSI's claims for breach of an oral joint venture agreement and interference with a contract. The district court concluded as a matter of law that "no contract was ever formed between [CSI] and Eller." *City Solutions, Inc. v. Clear Channel Communications, Inc.*, 201 F.Supp.2d. 1035, 1045 (N.D.Cal.2001) (*"Clear Channel I "*). In light of this ruling, the court invited Eller to file a motion for partial summary judgment regarding CSI's claim for breach of fiduciary duty. *Id.* Eller filed the motion suggested by the district court, which it granted, holding "as a matter of law [that] the negotiations [between the parties] did not produce a fiduciary duty." *City Solutions, Inc. v. Clear Channel Communications, Inc.*, 201 F.Supp.2d. 1048, 1051 (N.D.Cal.2002) (*"Clear Channel II "*).

At the close of CSI's presentation of evidence at trial, the defendants filed motions for the entry of a JMOL on each claim, pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The district court granted Clear Channel's motion, but denied Eller and Adshel's motion for a JMOL, without prejudice to renewal after the jury returned a verdict.

The jury found that Eller was liable on the fraud claim and awarded CSI $9 million in damages. The jury awarded CSI $800,000 on its unfair competition claim. In addition, the jury found that Eller had breached the confidentiality agreement, but awarded no damages. The jury also found that Eller had not violated the UTSA and that Adshel was not liable for common law unfair competition.

After the jury returned its verdict, Eller renewed its motion for a JMOL and in the alternative for a new trial, pursuant to Rule 59 of the Federal Rules of Civil Procedure. The district court granted Eller's motion for a JMOL with respect to the fraud verdict and set aside the $9 million award. The court denied Eller's motion for a JMOL regarding the award of $800,000 for unfair competition. The court denied Eller's motion for a new trial. Each party has appealed from the orders entered against it.

The district court had diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). We have jurisdiction over this timely filed appeal under 28 U.S.C. § 1291.

## III

CSI maintains its appeal from the order granting Eller's motion for a JMOL on CSI's fraud claim in which the jury awarded CSI $9 million in damages. Eller cross appeals from the denial of its motion for a

JMOL on the unfair competition claim in which the jury awarded CSI $800,000 in damages, and the denial of its motion for a new trial.

CSI contends that Eller is liable in tort for fraudulently misrepresenting its agreement to work exclusively with CSI in submitting a joint bid to the City. In addition, CSI asserts that Eller's conduct, namely the misappropriation of confidential bidding strategies, constituted unfair competition which resulted in lost profits to CSI.

Eller asserts that the district court did not err in granting JMOL on the fraud claim because CSI failed to prove Eller was liable for fraud as a result of its decision to bid with Adshel. Eller contends that CSI did not rely on any representation by Eller that it would bid with CSI, and therefore failed to prove causation. In addition to contesting liability, Eller also contends that the $9 million damages award was impermissibly speculative. Further, Eller asserts that the $800,000 damage award for unfair competition was equally unsupported by the evidence presented at trial. Eller argues that the district court erred in denying its motions for a JMOL and its motion for a new trial on CSI's unfair competition claim.

We review de novo the granting of a motion for JMOL. *Jorgensen v. Cassiday*, 320 F.3d 906, 916 (9th Cir.2003). A district court may overturn a jury's verdict by granting a Rule 50(a) motion only if "a party has been fully heard on an issue and there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting Fed.R.Civ.P. 50(a)). We must review all of the evidence in the record, drawing all reasonable inferences in favor of the non-moving party. *Id.* at 150, 120 S.Ct. 2097.

A.

■ Viewing the evidence in the light most favorable to CSI, the record demonstrates that it carried its burden of persuading the jury that Eller committed fraud in representing to CSI that it would work exclusively with CSI to submit a joint bid in response to the City's RFP, and in later terminating its relationship with CSI and bidding with Adshel. The Supreme Court of California has recognized "promissory fraud" as a "subspecies of the action for fraud and deceit." *Lazar v. Superior Ct.*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996). "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Id.* (internal quotation marks and citations omitted). CSI was required to persuade the jury by a preponderance of the evidence as to each of these elements in order to prevail on its cause of action for fraud. *See Kruse v. Bank of Am.*, 202 Cal.App.3d 38, 60–61, 248 Cal.Rptr. 217 (1988). Moreover, under California law, CSI was required to persuade the jury as to the amount of damages it suffered with "reasonable certainty." *See, e.g., Stott v. Johnston*, 36 Cal.2d 864, 875, 229 P.2d 348 (1951).

■ The district court charged the jury with the following instruction as to the damages available for both the fraud and the unfair competition claims:

I will now discuss with you the damages that City Solutions may recover for fraud or unfair competition claims. Damages means the amount, if any,

which will reasonably and fairly compensate City Solutions for *any injury* you find was caused by the defendant. In determining the amount of damages, *you should consider* City Solutions' out-of-pocket costs from March 31, 1998 to June 3, 1998. Out-of-pocket costs are defined as costs paid out of one's own funds.

(Emphasis added.) Neither CSI nor Eller objected to this instruction. In its motion for JMOL, Eller contended that the instruction was intended to limit damages to out-of-pocket costs, and that the jury improperly awarded "benefit-of-the-bargain" damages. In response, CSI maintained that the jury properly awarded "lost profits" damages.

Eller does not question the principle that lost profits are available in fraud actions. Rather, Eller argues that CSI failed to prove causation through justifiable reliance, an essential element of a fraud claim. *See Lazar*, 12 Cal.4th at 638, 49 Cal.Rptr.2d 377, 909 P.2d 981.

■■■ Under California law, " '[a] complete causal relationship between the fraud or deceit and the plaintiff's damages is required.' " *Small v. Fritz Cos.*, 30 Cal.4th 167, 202, 132 Cal.Rptr.2d 490, 65 P.3d 1255 (2003) (internal quotation marks omitted) (quoting *Williams v. Wraxall*, 33 Cal.App.4th 120, 132, 39 Cal.Rptr.2d 658 (1995)). "An essential element in recovery for deceit is proof of the plaintiff's justifiable reliance on the defendant's fraudulent representations." *Slakey Bros. Sacramento, Inc. v. Parker*, 265 Cal.App.2d 204, 207–08, 71 Cal.Rptr. 269 (1968) (citing Cal. Civ.Code, § 1709). "Reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct which altered his or her legal relations, and when without such misrepresentation or nondisclosure he or she would not, in all reasonable probability, have entered into the contract or other transaction." *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1239, 44 Cal.Rptr.2d 352, 900 P.2d 601 (1995). "It is not ... necessary that [a plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct.... It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." *Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951, 976–77, 64 Cal.Rptr.2d 843, 938 P.2d 903 (1997) (alterations in original) (quoting Restatement (Second) of Torts § 546 cmt. b at 103).

■■■ The Supreme Court of California recently explained that: "[d]etermining causation always requires evaluation of hypothetical situations concerning what might have happened, but did not.... This is so because the very idea of causation necessarily involves comparing historical events to a hypothetical alternative." *Viner v. Sweet*, 30 Cal.4th 1232, 1242, 135 Cal.Rptr.2d 629, 70 P.3d 1046 (2003). Because of the highly subjective nature of a causation analysis, the Supreme Court of California has instructed that the question whether a party detrimentally relied on the misrepresentation of another party is properly left to a jury. "Except in the *rare case* where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *Alliance Mortgage*, 10 Cal.4th at 1239, 44 Cal.Rptr.2d 352, 900 P.2d 601 (emphasis added) (quoting *Blankenheim v. E.F. Hutton & Co.*, 217 Cal.App.3d 1463, 1475, 266 Cal.Rptr. 593 (1990)); *see also Bastian v. County of San Luis Obispo*, 199 Cal.App.3d 520, 531, 245 Cal.Rptr. 78 (1988) ("Facts relating to the issue of causation is a job properly left to the trier of

fact."). But "whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to *only one* conclusion based on the facts." *Guido v. Koopman,* 1 Cal.App.4th 837, 843, 2 Cal.Rptr.2d 437 (1991) (emphasis added).

Here, the district court concluded that "given the strength of the Eller–Adshel bid, there is *no scenario* by which a jury could have reasonably concluded that [CSI] could have won the bid, either alone or in combination with anyone other than Eller." *City Solutions, Inc. v. Clear Channel Communications, Inc.,* 242 F.Supp.2d 720, 734 (N.D.Cal.2003) (*"Clear Channel III "*) (emphasis in original). In determining whether CSI relied on Eller's misrepresentations, however, the district court failed to consider the evidence presented by CSI tending to demonstrate the opposite. The district court stressed the fact that CSI had conceded that it was *"not* hurt by having to bid with the two companies that replaced Eller." *Id.* at 733 (quoting Pl. Supp. Opp. Memo at 3–4) (emphasis in original). The sentence that follows the language quoted by the district court, however, states: "Rather City Solutions suffered damages because Eller solicited Adshel to bid and joined with Adshel to bid against City Solutions." Pl. Supp. Opp. Memo at 4. The district court failed to recognize that a jury could have found that CSI was hurt by Eller's *improved* proposal attributable to its misuse of CSI's confidential bidding strategies.

In ruling on a motion for JMOL, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or *weigh the evidence." Reeves,* 530 U.S. at 150, 120 S.Ct. 2097 (emphasis added). The district court noted that "[g]iven the large margin of victory for Eller–Adshel, it would be hard to conclude that plaintiff could have found a partner to overcome the deficit." *Clear Channel III,* 242 F.Supp.2d. at 733. As CSI points out in its brief, however, the difference in scores was only 15%, or a ratio of 6 to 5, and that a *single digit* adjustment to the scores in the categories questioned by the district court would have changed the result. Resp. Op. Brief at 36. By "doing the math" another way, CSI calls into question the district court's finding that there was *"no scenario* by which a jury could have concluded" that the scores were close enough to find that the difference was the result of Eller's fraud. *Clear Channel III,* 242 F.Supp.2d. at 734. Indeed, the district court conceded that: *"[h]ad the bids been closer,* a jury could reasonably have found that the eleventh-hour scramble prejudiced plaintiff. In that case, the *verdict would have to be sustained." Id.* (emphasis added). A reasonable jury could have found, by doing its own math, that Eller submitted a *better* bid because of the knowledge it fraudulently gained from its dealings with CSI. Likewise, a reasonable jury could have found that, had Eller not promised to bid with CSI, it would have found someone else with whom to bid earlier in the process, thereby placing it in a better position to compete. Either way, the jury was entitled to conclude, based on the evidence presented at trial, that CSI justifiably relied on Eller's misrepresentations.

Drawing all reasonable inferences in favor of CSI, as we must, we hold that there was a legally sufficient basis for a jury to find that the City might have awarded CSI the contract absent Eller's fraudulent conduct. *See Reeves,* 530 U.S. at 149, 120 S.Ct. 2097 (noting that a district court may grant a Rule 50 motion only when "no legally sufficient basis for a reasonable jury to find for that party on that issue").

CSI presented expert testimony that it suffered lost profits of at least $11.6 million because of Eller's fraud and unfair

competition. Thus, CSI presented a "legally sufficient basis" for the award of $9 million in lost profits for Eller's fraudulent conduct and $800,000 for unfair competition. *Id.* The jury was instructed to weigh the evidence and avoid awarding duplicative damages. Its findings were supported by evidence in the record. Therefore, we hold that the district court erred in granting JMOL on the fraud claim.

### B.

█ In addition, we hold that the district court correctly denied Eller's motion for a JMOL and its motion for a new trial with respect to the $800,000 damages award on the common law unfair competition claim.

> Common law misappropriation is one of a number of doctrines subsumed under the umbrella of unfair competition. It is normally invoked in an effort to protect something of value not otherwise covered by patent or copyright law, trade secret law, breach of confidential relationship, or some other form of unfair competition.

*United States Golf Ass'n v. Arroyo Software Corp.,* 69 Cal.App.4th 607, 618, 81 Cal.Rptr.2d 708 (1999). CSI carried its burden of persuading the jury by a preponderance of the evidence of the following elements of the tort of unfair competition under California law: (1) that CSI had invested substantial time, skill or money in developing its property; (2) that Eller appropriated and used CSI's property at little or no cost; (3) that Eller's appropriation and use of the CSI's property was without the authorization or consent of CSI; and (4) that CSI could establish that it has been injured by the Eller's conduct. *Balboa Ins. Co. v. Trans Global Equities,* 218 Cal.App.3d 1327, 1342, 267 Cal.Rptr. 787 (1990). In addition to the general instruction on damages, the jury was also instructed that "property," for purposes of the unfair competition claim, was "not limited to physical or tangible property. The term property can include a confidential and proprietary business strategy developed to respond to the 5419 RFP of the City and County of San Francisco." *Clear Channel III,* 242 F.Supp.2d. at 735.

Eller argues that because the jury did not find Eller liable on the trade secrets claim, no reasonable jury could have found Eller liable for unfair competition. Eller conceded in its opening brief, however, that CSI presented evidence at trial that bidding strategies discussed by the parties included (1) the idea that 500 of the 1000 newsracks should bear advertising, and (2) that there should be no revenue sharing component in the bid. Pet. Op. Brief at 35. The district court similarly noted that CSI·had presented evidence during trial that Eller misappropriated CSI's bidding strategy of proposing 500 ad faces and not proposing revenue sharing. *Clear Channel III,* 242 F.Supp.2d. at 735. The court determined, therefore, that the evidence in the record supported a finding that Eller misappropriated CSI's property. *Id.*

> The district court stated that:
>
> Once the jury found that Eller misappropriated CSI's property, it may have awarded damages to compensate CSI for its worry regarding Eller's misuse of its confidential information ... [or] on the theory that Eller misused CSI's business acumen that had intrinsic value ... [or] for its expenditure of time and effort teaching Eller about the modular-newsrack business.

*Id.* at 735–36.

"We may affirm the district court on any ground supported by the record." *Dixon v. Wallowa County,* 336 F.3d 1013, 1018 (9th Cir.2003) (citing *Papa v. United States,* 281 F.3d 1004, 1009 (9th Cir.2002)).

We are not bound by the district court's speculation that the jury may have based its award of damages on emotional distress or "worry." *Clear Channel III*, 242 F.Supp.2d. at 736. As discussed above, the jury could have reasonably inferred from the totality of the circumstances that CSI might have been awarded the contract but for Eller's misuse of CSI's confidential bidding strategies. The jury was likewise entitled to award lost profits on the claim of unfair competition based on the testimony of CSI's expert. In addition, the jury was given a limiting instruction that if it "award[ed] damages on multiple causes of action, [it was required to] eliminate any overlapping damages to prevent counting as set forth in the special verdict form."

CSI produced evidence at trial that it invested substantial time and skill in developing its bidding strategies and that Eller appropriated and used CSI's property without CSI's authorization or consent. Accordingly, we hold that the district court did not err in denying Eller's motion for a JMOL on the unfair competition claim.

## C.

■ Finally, Eller contends that even if we affirm the district court's decision to deny Eller's motion for a JMOL on CSI's unfair competition claim, it is entitled to a new trial because the verdict was against the clear weight of the evidence. We review the denial of a motion for a new trial pursuant to Rule 59(a) of the Federal Rules of Civil Procedure for abuse of discretion. *Jorgensen*, 320 F.3d at 918. A new trial is warranted where the verdict is contrary to the clear weight of the evidence and the verdict results in the miscarriage of justice. *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 839 n. 14 (9th Cir.2003).

In support of this contention, Eller merely reiterated its argument that CSI failed to produce any legally sufficient evidence that it was liable for fraud because its score was too low to have been awarded the contract by the City. *See* Pet. Op. Brief at 50 ("For the reasons articulated in the foregoing argument, the verdict is against the clear weight of the evidence."). However, we have recognized that a party who appeals from the denial of a motion for a new trial "has a substantial burden to overcome" in demonstrating that the trial judge abused his discretion. *Berns v. Pan American World Airways, Inc.*, 667 F.2d 826, 831 & n. 6 (9th Cir.1982). ("Where a litigant forwards a motion for a new trial based on a claim that the verdict is excessive, the Ninth Circuit has stated that it may not reverse the trial court unless the verdict is grossly excessive or monstrous '[a]bsent a total want of evidence on all or certain portions of the case, or the erroneous exclusion from consideration by the trial court of appropriate matters or a showing of bias or prejudice on the part of the jury.'") (quoting *Siebrand v. Gossnell*, 234 F.2d 81, 94 (9th Cir.1956)). Eller has failed to demonstrate that there was a total want of evidence of liability for unfair competition or that the jury's award was not supported by the testimony of CSI's expert. Accordingly, we hold that the district court did not abuse its discretion in denying Eller's motion for a new trial.

The order granting Eller's Motion for Judgment as a Matter of Law on the fraud claim is **REVERSED**.

The denial of Eller's motion for Judgment as a Matter of Law on the unfair competition is **AFFIRMED**.

The denial of Eller's Motion for a New Trial is **AFFIRMED**.

CSI's appeal from the order granting summary judgment in favor of Eller on the

joint venture and breach of fiduciary duty claims is **DISMISSED.**

Costs are awarded to CSI.